## APPEAL OF RHOADES, BROWNSON & KAMPMAN, INC.

Docket No. 894.  Submitted April 27, 1925.  Decided June 30, 1925.

Taxpayer *held* to be a corporation entitled to personal service classification.

*Arthur L. Strasser, Esq.,* for the taxpayer.
*J. Arthur Adams, Esq.,* for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1920, in the amount of $3,274.01, and involves the questions as to what is a reasonable rate of depreciation upon small tools and other equipment used by the taxpayer in its business, and whether the taxpayer is a personal service corporation under the provisions of section 200 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer is a corporation having its principal place of business at 189 Franklin Street, New York City. It was organized under the laws of the State of New York on or about January 19, 1920, with an authorized capital stock represented by shares having a par value of $10 each. At the time of its organization the original organizers and their associates acquired stock as follows:

|  | Shares. |
|---|---|
| William D. Bogaerts | 150 |
| Charles E. Rhoades | 250 |
| Louis G. Brownson | 250 |
| William A. Kampman | 250 |
| William A. Rhoades | 25 |
| Frederick R. Rhoades | 25 |
| Alton Anderson | 25 |

The total number of shares issued was 975, all of which were paid for with cash. This distribution of stock ownership and membership of the corporation continued unchanged throughout the year 1920. Of the total amount paid in for stock, $8,056.41 was used in the purchase of weighing scales, marking devices, and other small tools and portable equipment used by the members of the organization in carrying on their business.

For a number of years prior to the date of the organization of the taxpayer corporation each of the seven persons who became asso-

ciated as members of the taxpayer company had been engaged in the business of weighing, sampling, and grading crude rubber, and had acquired a recognized degree of professional skill required in the performance of such business.

Charles E. Rhoades had been engaged in this business for a period of 25 years and was a recognized expert weigher, sampler, and grader of crude rubber. Upon the organization of the taxpayer he became its president and still holds that position. William Kampman had been engaged in the same line of business for a period of 10 or 12 years, during which time he had done nothing except the work of weighing, grading, and sampling crude rubber. Louis G. Brownson had been engaged in this line of work for 10 years prior to 1920, and William D. Bogaerts had been engaged in the same work in association with other parties for a number of years. William A. Rhoades and Frederick R. Rhoades were sons of Charles E. Rhoades and had worked in association with their father for a number of years prior to the organization of the taxpayer.

In general, the methods of carrying on business performed by members of the taxpayer company are as follows:

When a steamship carrying crude rubber arrives at the port of New York, the shipper's agent communicates with the taxpayer's office and requests the taxpayer to send one of its members to the pier where the steamship docks, and there to perform the service of weighing, sampling, and grading the consignment of crude rubber. Thereupon, one of the members of the taxpayer company goes to the pier and, after the consignment of rubber has been removed from the steamship, causes it to be placed on scales and weighed, and the weighing is done and the record of the weights kept by a member of the taxpayer company. Certified copies of the weights are immediately made out and furnished to the agency applying for the service. If samples are to be taken the member of the company causes 10 per cent of the cases in which the crude rubber is contained to be opened and samples taken therefrom which are submitted to the owners of the goods with the report of weights, etc. If the shipper orders that the consignment be graded, the cases containing the crude rubber are opened and the material is removed; the inferior grades are separated from the standard grades and reports concerning the same are made up and furnished with the record of weights and samples to the owner of the consignment. There are some 60 to 70 recognized grades of crude rubber. All consignments arrive under contracts defining some specified standard grade. A copy of this contract is sent to the taxpayer and the member of the taxpayer company performing the service checks both the samples and the grades against the contract provisions. All reports of weighing,

sampling, and grading of crude rubber made in the manner above outlined are accepted by both the seller and buyer of the rubber without question. Such acceptance is based upon the known and recognized efficiency and professional attainments of the member of the taxpayer company who actually performs the service. When a member of the taxpayer company goes out on a job, he proceeds first to some point on the docks where his company has a receptacle in which are kept weighing scales and such other tools and equipment as are necessary to be used in performing the work. He then procures from some recognized labor-union organization such a number of common laborers as he deems necessary to perform the labor of moving and handling the cases of rubber, prying open the cases, and reconditioning the same after the job is completed. As a rule, this labor is hired for the job and paid for by the hour, and the exact amount paid to the common laborer is charged against the taxpayer's client as a part of its bill for services.

There are four other organizations operating at the port of New York and doing the same kind of work that the taxpayer performs. These five concerns handle approximately 90 per cent of all imports of crude rubber. There are also available at the port of New York a number of persons who are capable weighers and, at times, when the orders for business coming to the taxpayer's office exceed the capacity of members of the company to perform, it procures the temporary assistance of some of such weighers.

The taxpayer organization has an office where it pays a rental of $75 per month, and during the year 1920 employed two stenographers, a bookkeeper, and an office boy.

The operating equipment owned and used by the taxpayer consists of weighing scales, mallets, prizes and hooks, and various other small tools. This equipment is kept in about forty or fifty separate complete outfits, which are stored at convenient places on the piers near the points where the work of weighing, sampling, and grading must be done. This equipment is replaced on the average of about once in two or three years.

The business of weighing, sampling, and grading crude rubber requires a great degree of skill, experience, and knowledge, all of which is acquired only by long study and experience in the business. Under the laws of the State of New Jersey weighers are required to obtain a state license. The services furnished through the taxpayer organization are paid for by its clients on the basis of a certain recognized scale of fees. For instance, during the year 1920 the fee for weighing rubber was 7 cents per 100 pounds. When a member of the taxpayer organization finishes a job he returns to the office, writes up his report, and makes out a bill for the services and

charges in accordance with the recognized practices of the business. Such bill is immediately forwarded to the shipper. During the year 1920 every member of the taxpayer organization was regularly and constantly engaged in performing the duties and services required by its clients, and none of such members had any other business. In its income and profits-tax return for the calendar year 1920 the taxpayer showed gross income of $110,174.05; ordinary and necessary expenses, including taxes, $27,352.53; amounts paid for common labor, $29,075.17; deduction for wear and tear of tools and equipment, $3,056.41; loss from fire in excess of insurance, $875.59; salaries of members of taxpayer organization, $27,860; and net income, $11,954.35. During that year the members of the organization owned its capital stock and received compensation in the form of salaries, and were assigned portions of its net income, as follows:

| | Number of shares owned. | Salary received. | Share of net income. |
|---|---|---|---|
| C. E. Rhoades | 250 | $6,150.00 | $3,065.22 |
| L. G. Brownson | 250 | 6,150.00 | 3,065.22 |
| W. Kampman | 250 | 6,150.00 | 3,065.22 |
| W. Bogaerts | 150 | 1,880.00 | 1,839.13 |
| W. A. Rhoades | 25 | 2,720.00 | 306.52 |
| F. R. Rhoades | 25 | 2,510.00 | 306.52 |
| A. Anderson | 25 | 2,300.00 | 306.52 |
| Total | 975 | 27,860.00 | 11,954.35 |

The statement of assets and liabilities of the taxpayer company at the beginning and end of the year 1920 was as follows:

ASSETS.

| | Jan. 19, 1920. | Dec. 31, 1920. |
|---|---|---|
| Tools | $6,750.00 | $5,000.00 |
| Office furniture | | 846.22 |
| Cash | 750.00 | 1,459.06 |
| Accounts receivable | | 16,393.29 |
| Total | 7,500.00 | 23,698.57 |

LIABILITIES.

| | Jan. 19, 1920. | Dec. 31, 1920. |
|---|---|---|
| Capital stock | $7,500.00 | $9,750.00 |
| Accounts payable | | 1,428.19 |
| Officers' accounts | | 593.07 |
| Commissions due | | 61.46 |
| Capital-stock tax unpaid | | 10.00 |
| Undivided profits | | 11,855.85 |
| Total | 7,500.00 | 23,698.57 |

The taxpayer made its income and profits-tax return for the year 1920 as and in the form provided for a personal service corporation. The Commissioner rejected the taxpayer's claim for such classification, modified its deduction for wear and tear of equipment, and from such determination the taxpayer brings this appeal.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

TRUSSELL: In so far as the controversy involved in this appeal is based upon the allowable deduction for wear and tear of the tools and equipment used in the taxpayer's business, the testimony of the witness examined must be taken as establishing the fact that the tools and equipment so employed and their use are of such a character that they must be replaced at least as often as once in two or three years, and upon that basis a deduction of $3,056.41 on an investment of $8,056.41 can not be said to be unreasonable. We are of the opinion that the Commissioner was not warranted in making any modification of the taxpayer's accounts by reason of the amount deducted for depreciation.

The record of this case is clear and contains convincing evidence that the taxpayer as a corporate organization, during the year 1920, was engaged only in selling the services of its members in the performance of a business requiring special qualifications as to skill, experience, and knowledge of a technical character, and that the corporate form of organization must have been adopted by the members of the taxpayer company simply as a matter of convenience in organizing and selling the personal services of its members. While it appears that the taxpayer company had a paid-in capital of $9,750, it also appears that more than $8,000 of this amount was invested in office furniture and the operating tools and equipment used by the members of the organization in carrying on their trade. These tools and equipment, which constitute practically all of the capital of the company, are not unlike the kit of tools carried by every mechanic in the conduct of his business; they differ little in general from the equipment of the physician or surgeon in carrying on his profession, or the office furniture and library of the lawyer; and we are of the opinion that such funds as any mechanic, physician, surgeon, or lawyer has invested in the tools and equipment necessary for his business are not such a form of capital as to be considered under the Revenue Act of 1918 as a material factor in

producing earnings and profits. It is plain from the record of this appeal that the taxpayer did not have, but also that it did not have any use for, any other capital. While it appears that during the year 1920 the taxpayer employed a considerable amount of common labor hired at a certain fixed sum per hour, it further appears that the taxpayer made no profit upon the employment of such labor; that it hired the labor at the fixed union scale and charged such labor to its patrons at the same figure. The record plainly shows that this taxpayer, during the year 1920, neither received nor earned any income other than from the fees paid to it for the personal services of its members in performing the duties of weighers, samplers, and graders of crude rubber, and that each and all of the members of the organization were continuously engaged in the performance of such services. We are, therefore, of the opinion that the taxpayer, during the calendar year 1920, was a corporation whose income must be ascribed primarily to the activities of the principal owners or stockholders, all of whom were then actively engaged in conducting the business of the corporation, and in which capital was not a material income-producing factor.